## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**DARRELL W. WHITE**

**VERSUS**

**MICHAEL J. ASTRUE,**
**COMMISSIONER OF THE SOCIAL**
**SECURITY ADMINISTRATION**

**CIVIL ACTION**

**NO. 08-629-JJB-CN**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have ten (10) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 10 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

Signed in chambers in Baton Rouge, Louisiana, August 24, 2009.

_____
**MAGISTRATE JUDGE CHRISTINE NOLAND**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DARRELL W. WHITE** | **CIVIL ACTION** |
| **VERSUS** | |
| | **NO. 08-629-JJB-CN** |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF THE SOCIAL** **SECURITY ADMINISTRATION** | |

## MAGISTRATE JUDGE'S REPORT

Plaintiff Darrell W. White seeks judicial review of a final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act.  In making that final decision, the Administrative Law Judge (ALJ) reached the fifth step of the five-step sequential disability analysis set forth in 20 C.F.R. § 416.920(b)-(f),[1] and found that plaintiff had the residual functional capacity (RFC) to perform other work in the national economy. (Tr. 16-17.)

## FACTS AND PROCEDURAL HISTORY

On February 25, 2005, plaintiff filed applications for disability benefits and supplemental security insurance benefits alleging disability due to glaucoma and high blood pressure beginning December 26, 2004. (Tr. 15, 38-41.)  Both applications were  denied at

---

[1] Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988).

2

the initial level on May 27, 2005. After a timely request for hearing, the Administrative Law Judge (ALJ) conducted a Video Hearing on January 17, 2007.[2] The claimant, his attorney, and a vocational expert (VE) appeared at the conference in Baton Rouge, La., and the ALJ presided over the hearing from Alexandria, La. (Tr. 123-150.) On May 11, 2007, the ALJ issued an adverse decision denying disability and supplemental security insurance benefits finding that despite his vision problems, plaintiff retained the RFC to perform unskilled medium work activities with sight-related limitations. (Tr. 22.)[3] The Appeals Council declined review on August 8, 2007 (Tr. 4-6) and the decision became the final decision of the Commissioner, which decision is now before this Court.

## ANALYSIS

Judicial review of a final decision of the ALJ denying disability insurance benefits and supplemental security income benefits is limited to two inquiries: (1) whether there is substantial evidence in the record as a whole to support the ALJ's findings, and (2) whether the ALJ applied the proper legal standards.[4] In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision exists, but the Court may not reweigh the evidence in the record, nor

---

[2] 20 C.F.R. §§ 404.936(c) and 416.1436(c) ("....the administrative law judge determines whether your appearance or that of any other individual who is to appear at the hearing will be made in person or by video teleconferencing.")

[3] Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. §§404.967(c), 416.967(c).

[4] Boyd v. Apfel, 239 F.3d 698 (5th Cir. 2001).

try the issues de novo, nor substitute its judgment for the ALJ's even if the evidence preponderates against the ALJ's decision. Id. Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. Id. A finding of "no substantial evidence" will be made only where there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. Id.

The burden of proof in disability administrative hearings rests predominately on the plaintiff, and toward that end, the plaintiff and the ALJ conduct a five-step analysis.[5] Only if the plaintiff proves that he is no longer able to work in his past relevant work does the burden shift to the Commissioner to establish that the plaintiff nonetheless has the ability to engage in other substantial gainful activity.[6]

In the present case, the ALJ found that plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, and that he had not engaged in substantial gainful activity since December 26, 2004, the alleged onset date. (Findings 1 and 2, Tr. 17.) The ALJ further found that plaintiff had severe impairments of glaucoma and essential hypertension, but that these impairments either alone or in combination failed to meet or medically equal one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1.[7] (Findings 3 and 4, Tr. 17.) The ALJ then found that plaintiff had the RFC to lift and carry

---

[5] Brown v. Apfel, 192 F.3d 492, 497-498 (5th Cir. 1999).

[6] Rivers v. Schweiker, 684 F.2d 1144, 1155-1156 & n.14 (5th Cir. 1982).

[7] *See*, 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.

up to fifty pounds occasionally and up to twenty-five pounds frequently, stand and walk at least six hours in a workday, and sit about six hours in a workday, which is medium work. Further, the ALJ limited plaintiff's RFC because he has decreased vision with best-corrected vision in the right eye of 20/70 and light perception only in the left. (Finding 5, Tr. 18.) With this RFC and sight limitation, the ALJ found that plaintiff was unable to perform his past relevant work as an oilfield laborer, which is considered heavy, unskilled work. However, the ALJ found, given plaintiff's age, education, work experience and RFC, there were jobs existing in significant numbers in the national economy that plaintiff could perform. (Findings 6, 7, 8, 9 and 10, Tr. 21-22.)

The plaintiff claims that the ALJ erred in two instances: 1) finding that plaintiff's visual impairment did not satisfy Listed Impairment 2.03A; and 2) finding that testimony from the vocational expert supported a finding that there are a significant number of jobs in the economy that plaintiff could perform.

Plaintiff first asserts that his blindness meets the requirement of Listing 2.03A of the listed impairments. Listing 2.03A states:

> 2.03 *Contraction of the visual field in the better eye*, with:
>
> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees;...[8]

---

[8] 20 C.F.R. pt. 404, subpt. P, app. 1, 2.03A.

In order to satisfy any listed impairment, a plaintiff must manifest all the specified criteria of a particular listing and plaintiff bears the burden of proving that he satisfies all of the criteria.[9]

Plaintiff's treating physician is Dr. Lucy Borne.[10] The record shows that plaintiff was seen by Dr. Borne only two times in four years, once on October 13, 2001, and again on October 19, 2001. (Tr. 91-92.) Plaintiff presented the ALJ with a Vision Impairment Residual Functional Capacity Questionnaire dated August 15, 2005 completed by Dr. Lucy Borne. (Tr. 17, 105-107.) This report is dated nearly 4 years after plaintiff's last visit with Dr. Borne. It is unclear whether Dr. Borne examined plaintiff prior to completing the questionnaire as there are no diagnostic testing reports nor medical notes to reflect that an examination was performed which would support the facts of the report. Dr. Borne nonetheless reports that plaintiff's left eye had no recordable visual field and that his correctable right eye vision was 20/30 -1, but less than 10 degrees of peripheral visual field (Tr. 106.) She further reports that plaintiff experienced the following symptoms as a result of his decreased vision: difficulty reading small print; difficulty driving, especially at night; problems seeing in bright light; and an inability to see "off to the side" (Tr. 106.) With regard to working, Dr. Borne opines that plaintiff could work with large objects, but did not believe he could "safely ambulate" and that plaintiff's eye problem would not result in any

---

[9] Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991.)

[10] When Plaintiff refers to Lucy Bone, M.D., of the William Eye Center (Tr. 104 and Plaintiff's Brief at 5) as his alleged treating physician, it is presumed that plaintiff intends to refer to Claire Lucy Borne, M.D. of the Williamson Eye Center in Baton Rouge, Louisiana. *See*, http://www.williamsoncenters.com/WNEC/lborne.php.

unscheduled breaks at work, and that his blindness would "never" interfere with his attention or concentration. (Tr. 107.) Plaintiff contends that Dr. Borne's opinion supports a finding that plaintiff meets the requirements of 2.03A and is thus disabled. The ALJ, however, rejected the report because her opinions are unsupported by diagnostic testing and they are inconsistent with other vision testing performed on plaintiff before and after the assessment.

The ALJ discussed the following evidence, which supported his conclusions. (Tr. 19-20.) Plaintiff was seen by Dr. Kenneth C. Lafleur on April 8, 2005. Upon examination, Dr. LaFleur opined that plaintiff's best corrected visual acuity in the right eye was 20/40 distant and 20/60 near, and was only able to count fingers at one foot with his left eye. Dr. LaFleur also indicated that the test results of plaintiff's peripheral visual field could not be validated because plaintiff provided factitious responses to gross visual field testing. Dr. LaFleur did, however, conclude that plaintiff could read large print, handle and work with large objects, but could not read small print, drive an automobile or operate machinery, and had to avoid objects in the pathways, and people approaching from the side. (Tr. 19-20, 95-97.) Plaintiff asserts that because Dr. LaFleur concluded that plaintiff had to avoid objects in pathways and people approaching from the side, that plaintiff's peripheral vision meets the listed impairment and this conclusion supports Dr. Borne's findings. The Court disagrees. Although Dr. LaFleur acknowledges that plaintiff has some peripheral shortcomings, it does not prove that the point of fixation is no greater than 20 degrees, as required by the listing. Dr. LaFleur's testing could not be validated because he observed plaintiff performing tasks that underminded plaintiff's responses to the visual field testing.

Plaintiff was also seen on April 27, 2005, by Dr. Robert Blereau. Dr. Blereau assessed plaintiff's eye sight, with correction, as 20/70 on the right and 20/blind on the left. He diagnosed plaintiff as having glaucoma by history and hypertension with no evidence of end organ damage due to this hypertension. Dr. Blereau assigned no work-related limitations. (Tr. 20, 98-99.)

Plaintiff was seen by Dr. Donald Peavy on May 12, 2005, and on October 10, 2006. Dr. Peavy performed a consultative eye examinations on both dates. In May 2005, Dr. Peavy also reported that test results were not valid and noted that the plaintiff did not see any lights on visual field testing yet could shake hands, walk down the hall and find the door. He indicated that plaintiff could not read fine print, could not handle and work with large objects, could not drive an automobile, could not operate machinery, could not avoid objects in workplace pathways and could not avoid people approaching from the side. (Tr. 100.) Dr. Peavy assessed end stage glaucoma at this time. In October 2006, a little over a year later, Dr. Peavy again examined plaintiff and again reported the test results to be invalid. Dr. Peavy opined that while plaintiff stated that he could not see any of the light on the visual field test, he again observed plaintiff shaking hands, walking down the hall, stopping at the door and reaching and opening the door without assistance. Dr. Peavy then writes, "I realize he has a visual field deficit due to the appearance of his optic nerve, but am unable to quantify it." (Tr. 108.) At this visit, Dr. Peavy concluded that plaintiff could read large print, handle and work with large objects; his ability to avoid objects in the workplace pathways and avoid people approaching from the side is questionable, but he cannot read fine print,

drive an automobile or operate machinery. (Tr. 20, 108.)  Plaintiff asserts that Dr. Peavy's conclusions are riddled with inconsistencies.  Plaintiff states that in 2005 Dr. Peavy concluded that plaintiff could not handle and work with large objects, but in 2006, Dr. Peavy found that he could.  Plaintiff further asserts that although Dr. Peavy opined in both reports that he observed plaintiff performing tasks that contradict his response to the visual field testing, these are hardly the medically accepted clinical and laboratory diagnostic techniques contemplated that the regulations, and that because Dr. Peavy rejected the validity of the peripheral vision testing the ALJ should not have relied on Dr. Peavy's findings.  But in the same argument plaintiff states "the general tenor of his exams results is, in fact, supportive of claimant's position."  Plaintiff cannot have it both ways.  The record shows that during both examinations of Dr. Peavy, and the examination by Dr. LaFleur, plaintiff was observed performing tasks that contradicted his responses to the visual field tests performed by both doctors.  While plaintiff does not want these observances considered, the ALJ could not simply overlook them.  The regulations provide that descriptions and observations must be considered along with medical records to assist in determining to what extent an impairment keeps a claimant from performing particular work activities.  It is not a decision on whether a claimant is disabled, but rather an assessment that can be used as the basis for determining the types of work a claimant may be able to perform despite his impairments.[11]  Thus, both

---

[11] *See*, 20 C.F.R. §§ 404.1545, 416.945, *Your residual function capacity....* "We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations (See §404.1515 (d) through (f).)  We will also consider descriptions and observations of your limitations from your impairment(s) including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends or other persons."

physicians discredited the validity of their visual field testing, and because the ALJ must look at the record as a whole he was obligated by the regulations to consider these observations as well.

Plaintiff underwent yet another examination after the January 2007 hearing at the behest of the ALJ. Dr. Robert Ashton Holloway, Jr. examined plaintiff on February 2, 2007. Dr. Holloway concurred that plaintiff had glaucoma and that he had corrected vision of 20/70 in his right eye and only light perception in his left eye (Tr. 113.) Based upon his examination, Dr. Holloway also concluded that plaintiff could read large print, handle and work with large objects and should avoid workplace objects or people approaching from the side, and that plaintiff could not read fine print, drive or operate machinery. (Tr. 20, 113.)

While plaintiff argues that the ALJ's request that another examination be performed was "over-kill" and "excessive", the Court notes that neither the plaintiff nor his counsel objected to plaintiff undergoing another examination. (Tr. 148-148.) The Court finds that the ALJ acted reasonably since he has the responsibility to develop the facts fully and fairly relating to an applicant's claim for disability benefits.[12]

Plaintiff suggests that the ALJ did not analyze or evaluate the other eye examinations within the context of the treating physician's (Dr. Borne) factual findings. The ALJ discussed the other examinations, together with plaintiff's complaints, however he found that plaintiff's complaints regarding his visual impairment limitations did not affect his ability to function as much has plaintiff states. Plaintiff discusses the various medical reports and

---

[12] Newton v. Apfel, 209 F.3d 448, 458 (5th Cir. 2000) citing Ripley v. Chater, 67 F.3d 552 (5th Cir. 1995.)

10

argues that Dr. Lefleur's core conclusions regarding his peripheral vision loss are supportive of Dr. Borne's opinions and that fact was ignored by the ALJ. Plaintiff argues that Dr. Bleureau's report is void of any assessment of claimant's peripheral vision and that the two examinations by Dr. Peavy are riddled with inconsistencies, but states that their general tenor are supportive of his position. Plaintiff believes that the ALJ erred in not finding that plaintiff met the blindness listing simply because Dr. Borne completed an assessment indicating that plaintiff met the visual field requirement of the listing, and that the other peripheral vision examinations were invalid. At the third step of the analysis, the burden of proof rests upon the plaintiff to prove that his impairments meet or equal a listed impairment. The only proof plaintiff provides is Dr. Borne's August 15, 2005 assessment, and the ALJ chose not to give this assessment much weight since it was not supported by a current examination and was inconsistent with the other evidence in the record. As the defendant points out, the ALJ did not simply select one report over another. The ALJ relied on the examination results obtained by Dr. Blereau, Dr. Lafleur, Dr. Peavy and Dr. Holloway before rejecting Dr. Borne's medical opinion and finding plaintiff not disabled. The Fifth Circuit has held that when there are conflicting medical reports from examining physicians, the ALJ is to weigh the various physician reports and give some assessments reduced weight when they are not supported by medically acceptable clinical or laboratory diagnostic techniques or otherwise unsupported by the evidence.[13] The Fifth Circuit has also stated that the ALJ has the sole responsibility for determining a claimant's disability status and that "the ALJ is

---

[13] Spellman v. Shalala, 1 F.3d 357, 364 (5th Cir. 1993); Scott v. Heckler, 770 F.2d 482, 485 (5th Cir. 1985); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

free to reject the opinion of any physician when the evidence supports a contrary conclusion."[14] Further, treating physician's opinions are not conclusive and can be assigned little or no weight when good cause is shown.[15] The Court's function is to review whether the ALJ's decision is supported by substantial evidence, not to independently reweigh the evidence and consider whether it would rule as the ALJ did. Here, the ALJ rejected Dr. Borne's opinion because the evidence supported a contrary conclusion.

Plaintiff's testimony and statements are also inconsistent with having a visual impairment rendering him totally disabled. In December 2004, plaintiff admitted that his blindness was not the reason he stopped working. Plaintiff stated that his employer closed down and that he sought other employment after December 2004, but did not find a job immediately. (Tr. 129-130.) Plaintiff stated in his application that one of the things he could not do after his alleged onset date was work, drive, and read. (Tr. 49.) However, plaintiff reported that his hobby was reading and further denied any problems with personal care, such as dressing, bathing, shaving, feeding himself, or using the toilet. Plaintiff also claimed that he did indeed drive during the daytime, but had to have someone accompany him because he couldn't see the lines. The Court agrees with defendant that by plaintiff claiming that his only difficulty while driving was seeing the lines on the road demonstrates that he could see well enough to read street signs and traffic signals. Plaintiff also denied walking with a cane

---

[14] Newton v. Apfel, 1209 F.3d 448, 455-456 (5th Cir. 2000) citing Paul v. Shalala, 29 F.3d 208, 211 (5th Cir. 1994).

[15] "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence.", Id., citing Brown v. Apfel, 192 F.3d 492, 500 (5th Cir. 1999); Greenspan v. Shalala , 38 F.3d 232, 237 (5th Cir. 1994).

12

and admitted to being able to ascend and descend stairs, provided the area was lighted. (Tr. 53-54.) Also, plaintiff testified that in his spare time he enjoyed taking walks and watching television, albeit "a little bit." (Tr. 135.) He also admitted that he could recognize medication bottles such as Tylenol or Advil, but could not read the fine print. Given plaintiff's self-reporting to the examining physicians, his own testimony, and the fact that two of the examining physicians could not validate his peripheral field vision exams because both observed plaintiff performing acts that contradicted his responses to the test, the Court finds that the ALJ's decision that plaintiff's visual impairment did not meet or equal a listed impairment is supported by substantial evidence, and plaintiff has failed his burden at step three of the five-step analysis.

After finding that plaintiff had the RFC to perform medium work, but could not perform his past work because it was considered heavy unskilled, the ALJ enlisted the services of a vocational expert (VE). Plaintiff argues that had the ALJ accepted all the subjective visual complaints claimed by plaintiff, the VE testimony would have directed a finding of disabled. Plaintiff is assuming that the ALJ found that plaintiff's subjective complaints are credible. Here, the ALJ found they were not and assessed plaintiff with less-restrictive limitations. (Tr. 21-22.) Based on the hypothesis using plaintiff's less-restrictive limitations, the VE testified that plaintiff could work as a dishwasher, a hospital cleaner, an industrial cleaner, a motel housekeeper, or a housekeeper/cleaner. (Tr. 22, 145-146.) At the time of the hearing the ALJ did give a hypothetical situation of a plaintiff with severe limitations to the VE and the VE did indeed respond that all jobs would be eliminated.

However, plaintiff's claims of severity of his limitations were found to be not supported by substantial evidence and the ALJ is not required to rely on VE testimony that is based on unsubstantiated assumptions.[16] Further, the Fifth Circuit held in Bowling v. Shalala[17] that it was proper for the ALJ to reject the unsupported hypothetical question and response that a plaintiff desires. Here, the ALJ found that plaintiff's complaints of severe limitations were not credible. The Fifth Circuit has held that the judgment as to the credibility of testimony is the sole province of the ALJ.[18] The ALJ's credibility determination is entitled to considerable deference.[19] Furthermore, the regulations provide that a claimant's subjective complaints are considered credible only to the extent that the record evidence supports them. After considering both the plaintiff's testimony and complaints, and the record as a whole, the ALJ found the plaintiff's credibility to be lacking and the Court will give considerable deference to that determination.

For the reasons set forth above, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's findings that plaintiff was not disabled and that the ALJ followed the proper legal standards in making this determination.

---

[16] Owens v. Heckler, 770 F.2d 1276, 1282 (5th Cir. 1985).

[17] 36 F.3d 431, 436 (5th Cir. 1995).

[18] Carrier v. Sullivan, 944 F.2d 243, 247 (5th Cir. 1991).

[19] Falco v. Shalala, 27 F.3d 160, 164 (5th Cir. 1994).

## RECOMMENDATION

Accordingly, it is recommended that the ALJ's decision be affirmed and that the plaintiff's appeal be dismissed, with prejudice.

Signed in chambers in Baton Rouge, Louisiana, August 24, 2009.

**MAGISTRATE JUDGE CHRISTINE NOLAND**